Floyd W. Bybee, SB 012651
**BYBEE LAW CENTER, PLC**
90 S. Kyrene Rd., Ste. 5
Chandler, AZ 85226-4687
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Jarosik; | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| U.S. Bank National Association; | |
| Defendant. | (Jury Trial Demanded) |

## Preliminary Statement

1.    Plaintiff alleges that two credit card accounts and one checking or
savings account with overdraft protection were opened in his name
with Defendant US Bank National Association by an imposter. The
imposter made purchases or charges to the accounts for which
Plaintiff was billed. Even though Plaintiff contested all three
accounts, US Bank continued to seek payment from Plaintiff for
one of these fraudulent accounts.

2.     Plaintiff seeks actual damages, statutory damages, and attorney's fees for US Bank's violation of the Fair Credit Billing Act (FCBA) (part of the Truth in Lending Act), 15 U.S.C. § 1666 and Regulation Z, for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, and for negligence.

## Jurisdiction and Venue

3.     Jurisdiction over this action is premised upon 15 U.S.C. § 1640(e), 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1367.

4.     Venue is proper in this District under 28 U.S.C. § 1391(b), in that Defendant's conduct complained of occurred within the District.

## Parties

5.     Defendant US Bank is a nationally chartered bank regulated by the Office of the Comptroller of Currency.

6.     US Bank regularly conducts business within the state of Arizona.

7.     US Bank is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

8.     At all times relevant hereto, US Bank, in the ordinary course of business, regularly extended open-end consumer credit on which it assessed finance charges.

9.     Plaintiff Paul Jarosik is an individual residing in Maricopa County, Arizona.

10.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

11.     Plaintiff is alleged to have entered into three open-end credit transactions, namely two credit cards and an overdraft protection

- 2 -

account, with US Bank for personal, family or household purposes.

**Facts**

12. In the summer of 2017, Plaintiff learned that he was a victim of identity theft.

13. In July 2017, Plaintiff received a copy of his consumer report from Credit Karma which showed an inquiry made by US Bank.

14. Shortly thereafter, Plaintiff received a phone call from US Bank wanting him to make payments on a US Bank credit card.

15. During the call, Plaintiff explained that he had no US Bank credit cards or other accounts, and that the account the bank was calling about must have been fraudulently opened.

16. During that call, Plaintiff learned that an unidentified imposter had opened the US Bank accounts using an address in Missouri, a state in which Plaintiff has never lived.

17. Plaintiff explained during this call that he had never received anything from US Bank concerning the account(s), including the credit card(s), any billing statements, or any other written communication.

18. On July 27, 2017, Plaintiff followed up with US Bank's fraud and identity theft office and spoke to a person named "Lance."

19. During his call with Lance, Plaintiff again disputed the fraudulently opened accounts.

20. In response to Plaintiff's call, US Bank sent Plaintiff a letter dated July 28, 2017 asking that certain documents be provided in order for it to complete its investigation.

21. After receiving the July 28, 2017 letter, Plaintiff mailed to US Bank the completed the ID Theft Affidavit, together with a copy of his driver's license, a copy of a utility bill, a copy of his Social Security Card, and a copy of the Chandler Police Report.

22. Shortly thereafter, US Bank notified Plaintiff by letter dated August 4, 2017, that the overdraft protection account and the credit card account ending with the last four digits of 3117, had both been determined to be fraudulently opened and used, and that the bank was closing these accounts without any liability to Plaintiff.

23. US Bank also notified Plaintiff by letter dated August 11, 2017 that the overdraft protection account opened in his name has been closed as fraudulent, and that he would not be responsible for any balances related to the account.

24. However, on August 8, 2017, Plaintiff received a call from an individual named "Brian" from US Bank who had been assigned to investigate his fraud case.

25. During this call, Plaintiff informed Brian that any and all accounts with US Bank opened in his name were fraudulent and the result of identity theft.

26. Plaintiff explained that the address in Missouri was not his, and that in fact he had never resided in the state of Missouri.

27. He also explained that the charges, which were all or mostly made within the state of Missouri, were not his, and that he had no knowledge of them.

- 4 -

28. Plaintiff also stated that he had mailed US Bank the completed ID Theft Affidavit and supporting documents on August 7, 2017, which Brian claimed had not been received.

29. Beginning on August 22, 2017, Plaintiff began receiving calls from an individual by the name of "Pam" who was with the US Bank card member services office.

30. During these calls, Pam repeatedly asked Plaintiff about making the payments on the remaining credit card account.

31. Again, Plaintiff reiterated to Pam that there were three accounts opened, and that two had been determined to be fraudulent, and that the remaining account was also fraudulently opened by the same imposter using Plaintiff's name and personal identification information.

32. On August 24, 2017, Plaintiff received another call from Brian with US Bank.

33. During this call, Brian told Plaintiff that he had not received his ID Theft Affidavit and supporting documents.

34. During this call, Brian also told Plaintiff that he had denied Plaintiff's fraud claim and that he would be liable for the $19,000 balance.

35. Brian told Plaintiff during this call that he believed Plaintiff had gone into an anonymous chat room and provided his personal information to someone in Springfield, Missouri, leading to the fraudulent accounts and purchases.

36. Brian did not explain how he had come to such a conclusion.

37. Immediately after the call with Brian, Plaintiff, who was out of town, called his wife and asked her to fax US Bank the ID Theft Affidavit and supporting documents, which she did.

38. Nevertheless, US Bank notified Plaintiff by letter dated August 22, 2017 that it had determined that the credit card account ending with the last four digits of 1835 "[did] not qualify as unauthorized third party fraud."

39. The August 22, 2017 letter also stated that Plaintiff "will be responsible for payment of your fraud claim totaling $19,523.27 on the due date of the next billing statement."

40. The August 22, 2017 letter was signed by Brian P, Fraud Investigator.

41. Upon information and belief, this was the same Brian to whom Plaintiff had previously spoken.

42. US Bank sent Plaintiff a second letter dated August 22, 2107, which stated that the credit card account ending in 1835 has been cancelled due to "Fraud claim proved to be an intentionally false claim."

43. This August 22, 2017 letter was also signed by Brian P., Fraud Investigator.

44. Plaintiff also hired legal counsel to assist him in challenging US Bank on its determination that the credit card account ending in 1835 "[did] not qualify as unauthorized third party fraud," that the "Fraud claim proved to be an intentionally false claim," and that Plaintiff "will be responsible for payment of your fraud claim

- 6 -

totaling $19,523.27 on the due date of the next billing statement."

45.   On August 28, 2107, Plaintiff obtained a copy of his Equifax consumer report.

46.   The Equifax report showed that US Bank was reporting two accounts: a credit card with a balance of $19,249; and a line of credit with a balance of $2,518.

47.   The Equifax report also showed that US Bank had obtained a consumer report on Plaintiff on June 19, 2017.

48.   The inquiry on June 19, 2017 was made without Plaintiff's permission, and for a purpose outside the scope of permissible purposes under the FCRA.

49.   Plaintiff also obtained a copy of his Experian consumer report on August 28, 2107.

50.   The Experian report showed that US Bank was reporting two accounts: a credit card with a balance of $19,249; and a reserve line of credit with a balance of $2,518.

51.   The Experian report also showed two Springfield, Missouri addresses which did not belong to Plaintiff.

52.   Upon information and belief, US Bank reported the two Springfield, Missouri addresses to Experian as belonging to Plaintiff.

53.   On August 28, 2107, Plaintiff obtained a copy of his Trans Union consumer report.

54.   The Trans Union report showed that US Bank was reporting two accounts: a credit card with a balance of $19,249; and a line of credit with a balance of $2,518.

55.   The Trans Union report showed that US Bank had obtained a consumer report on Plaintiff on April 30, 2017.

56.   The Trans Union report states that this inquiry was a "consumer initiated transaction," which is false.

57.   The inquiry on April 30, 2017 was made without Plaintiff's permission, and for a purpose outside the scope of permissible purposes under the FCRA.

58.   The Trans Union report also showed that US Bank had obtained a consumer report on Plaintiff on July 28, 2017.

59.   The inquiry on July 28, 2107 was made by US Bank after Plaintiff had notified the bank that the accounts it had opened in his name were fraudulent, and made by an imposter.

60.   The inquiry on July 28, 2017 was willfully made without Plaintiff's permission, and for a purpose outside the scope of permissible purposes under the FCRA.

61.   The Trans Union report also showed two Springfield, Missouri addresses which did not belong to Plaintiff.

62.   Upon information and belief, US Bank had reported the two Springfield, Missouri addresses to Trans Union as belonging to Plaintiff.

63.   Plaintiff mailed his written dispute to US Bank within 60 days of any billing statement generated by US Bank concerning the credit card account(s).

64.   Despite receipt of Plaintiff's dispute of the fraudulent credit card account(s), and before meeting the requirements of 15 U.S.C. §

1666 to either correct the error or investigate and send an explana-

tion of the charges, US Bank took action to collect the disputed

credit card balance(s) by demanding payment.

65. US Bank's actions as set forth above were negligent resulting in

damages suffered by Plaintiff.

66. As a result of US Bank's action as set forth above, Plaintiff has

suffered actual damages, including, but not limited to, out of pocket

expenditures, invasion of privacy, damage to credit reputation,

damage to personal reputation, extreme frustration, hurt, anxiety,

worry, loss of appetite, loss of sleep, upset stomach, and other

emotional distress.

## Count I.   Violation of FCBA

67. Plaintiff incorporates the preceding paragraphs.

68. US Bank actions did not comport with the requirements under the

FCBA.

69. As a result of US Bank's violations of the FCBA, Plaintiff has

suffered actual damages, including, but not limited to, out of pocket

expenditures, invasion of privacy, damage to credit reputation,

damage to personal reputation, extreme frustration, hurt, anxiety,

worry, loss of appetite, loss of sleep, upset stomach, and other

emotional distress.

## Count II.   Violation of FCRA
### *Negligently Obtaining Consumer Report*
### *Without Permissible Purpose*

70. Plaintiff incorporates the preceding paragraphs.

71. US Bank acted negligently in requesting and obtaining Plaintiff's consumer reports without a permissible purpose.

72. US Bank's conduct in requesting and obtaining Plaintiff's consumer reports without a permissible purpose violated 15 U.S.C. §1681b(f).

73. As a result of US Bank's violations of the FCRA, Plaintiff has suffered actual damages, including, but not limited to, out of pocket expenditures, invasion of privacy, damage to credit reputation, damage to personal reputation, extreme frustration, hurt, anxiety, worry, loss of appetite, loss of sleep, upset stomach, and other emotional distress.

## Count III.   Violation of FCRA

### *Willfully Obtaining Consumer Report*

### *Without Permissible Purpose*

74. Plaintiff incorporates the preceding paragraphs.

75. US Bank acted willfully in requesting and obtaining Plaintiff's consumer reports without a permissible purpose.

76. US Bank's conduct in requesting and obtaining Plaintiff's consumer reports without a permissible purpose violated 15 U.S.C. §1681b(f).

77. As a result of US Bank's violations of the FCRA, Plaintiff has suffered actual damages, including, but not limited to, out of pocket expenditures, invasion of privacy, damage to credit reputation, damage to personal reputation, extreme frustration, hurt, anxiety, worry, loss of appetite, loss of sleep, upset stomach, and other

1  emotional distress.

2  **IV.  Negligence.**

3  78.  Plaintiff incorporates the preceding paragraphs.

4  79.  US Bank acted negligently when it opened three credit accounts in

5  Plaintiff's name without verifying that the imposter using Plain-

6  tiff's personal identification information was actually Plaintiff.

7  80.  US Bank acted negligently when it investigated Plaintiff's disputes

8  of the three credit accounts, determining that the credit card

9  account ending in 1835 "[did] not qualify as unauthorized third

10  party fraud," that the "Fraud claim proved to be an intentionally

11  false claim," and that Plaintiff "will be responsible for payment of

12  your fraud claim totaling $19,523.27 on the due date of the next

13  billing statement."

14  81.  As a result of US Bank's negligence, Plaintiff has suffered actual

15  damages, including, but not limited to, out of pocket expenditures,

16  invasion of privacy, damage to credit reputation, damage to per-

17  sonal reputation, extreme frustration, hurt, anxiety, worry, loss of

18  appetite, loss of sleep, upset stomach, and other emotional distress.

19  WHEREFORE, Plaintiff requests that this Court enter judgment

20  in his favor and against defendant US Bank as follows:

21  A.  actual damages;

22  B.  statutory damages under the FCBA in the amount of double

23  the finance charge, with a minimum of $500 and maximum

24  of $5,000, pursuant to 15 U.S.C. 1640(a)(2);

25  C.  pursuant to the FCRA, 15 U.S.C. § 1681n(a)(1)(A), award

1  Plaintiff his actual damages, or in the alternative, statutory

2  damages of not less than $100 and not more than $1,000 for

3  each impermissible access of his credit report, whichever is

4  greater;

5  D.  pursuant to the FCRA, 15 U.S.C. § 1681n(a)(2), award such

6  punitive damages as the Court deems appropriate;

7  E.  pursuant to  the FCRA, 15 U.S.C. § 1681n(a)(3), award costs

8  of the action and reasonable attorney fees; and

9  F.  grant such other and further relief as the court deems just

10  and proper.

11  **Demand for Jury Trial**

12  Plaintiff hereby demands a jury trial on all issues so triable.

13

14  RESPECTFULLY SUBMITTED:   December 21, 2017  .

15

16  s/ Floyd W. Bybee

17  Floyd W. Bybee, #012651
   **BYBEE LAW CENTER, PLC**

18  90 S. Kyrene Rd., Ste. 5
   Chandler, AZ 85226-4687

19  Office: (480) 756-8822
   Fax: (480) 302-4186

20  floyd@bybeelaw.com

21  Attorney for Plaintiff

22

23

24

25

- 12 -